Jerold D. Friedman (SBN: 290434)
LAW OFFICE OF JEROLD D. FRIEDMAN
19744 Beach Blvd. #390
Huntington Beach, CA 92648
Telephone:     (213) 536-1244
Facsimile:      (281) 667-3506
*jerry@lawofficejdf.com*

Attorney for Plaintiffs: AMANDA LUNDBERG,
HEATHER WILSON, CONNIE PEARSON,
PATRICIA FOLGAR, ELVIA SEDANO,
KATHY MANGRICH, JENIFFER ROBLES,
MELANIE SHAW

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT
## WESTERN DIVISION

| | |
|---|---|
| AMANDA LUNDBERG, HEATHER WILSON, CONNIE PEARSON, PATRICIA FOLGAR, ELVIA SEDANO, KATHY MANGRICH, JENIFFER ROBLES, and MELANIE SHAW, <br><br> Plaintiffs, <br><br> *v.* <br><br> COUNTY of LOS ANGELES; DOE SHERIFF DEPUTIES 1–3; and DOES 4–10, Inclusive, <br><br> Defendants. | **CASE NO.:** <br><br> **ORIGINAL COMPLAINT FOR:** <br><br> 1. **CAL. CONST. Art I, Sec. 2, 3** <br> 2. **FIRST AMENDMENT – CONTENT-BASED DISCRIMINATION** <br> 3. **FIRST AMENDMENT - RETALIATION** <br> 4. **42 USC § 1983 - MONELL** <br> 5. **BANE ACT – CIV. CODE § 52.1** |

Plaintiffs AMANDA LUNDBERG, HEATHER WILSON, CONNIE PEARSON, PATRICIA FOLGAR, ELVIA SEDANO, KATHY MANGRICH, JENIFFER ROBLES, and MELANIE SHAW ("Plaintiffs"), on behalf of themselves and the general public, bring this action against Defendants COUNTY OF LOS ANGELES, DOE SHERIFF DEPUTIES 1–3; DOE RODEO COMPANY, DOE RODEO ATTORNEY, and DOES 6–10, ("Defendants"). The following allegations are based on Plaintiffs' personal knowledge, on investigation by Plaintiffs' attorneys, and on their information and belief.

**ORIGINAL COMPLAINT**

# I.   __INTRODUCTION__

1.       This is a private attorney general action brought by Plaintiffs on their own behalf and on behalf of the general public.

2.       Plaintiffs are devoted advocates who speak on behalf of horses and other nonhuman animals who are exploited, neglected, abused, or killed. To spread their message in October 2019, Plaintiffs assembled during business hours at Horsethief Canyon Park ("Park"), a public park located at 301 Horsethief Canyon, San Dimas, California, which is owned and operated by the County of Los Angeles ("County"). Plaintiffs chose Horsethief Canyon Park because it was the site of a rodeo event that Plaintiffs sought to protest against. Based on what they have seen and heard, Plaintiffs allege that many horses and other animals used by the rodeo are exploited, neglected, and abused, and said exploitation, neglect, and abuse are matters of public concern.

3.       The Park itself is a traditional public forum under Art. I, Sec. 2-3 of the California constitution and the First Amendment of the federal Constitution. Additionally, the Park has a free speech zone that was conspicuously marked by a very large banner that stated, "FIRST AMENDMENT AREA." This zone was additionally a designated public forum established by the County or other authority.

4.       At all material times, Plaintiffs stood in the zone and engaged in free speech verbally (with and without a megaphone), visually with protest signs, and by having literature available to rodeo patrons and park visitors. No permit was required for Plaintiffs to engage in free speech in the zone in a public park. At the same time, the Rodeo Company that promoted and operated the rodeo used amplified sound over its public announcement system within approximately fifty feet of the zone. The Rodeo Company's amplified sound regularly drowned out Plaintiffs' non-amplified speech. Plaintiffs could not effectively communicate their message to the public when the Rodeo Company used its amplified sound unless Plaintiffs used their own amplified sound.

**ORIGINAL COMPLAINT**

5.      Rodeo Company's Attorney, who was present at the zone, instructed and incited three Los Angeles County Sheriff's Deputies to order Plaintiffs to stop using their megaphone on the baseless grounds of not having a permit to use amplified sound. There was no law or other rule in effect that required Plaintiffs to have a permit. Nonetheless, the Deputies detained Plaintiffs while they investigated Plaintiffs' possession of a permit and threatened Plaintiffs with citation and arrest unless Plaintiffs could produce a permit.

6.      Therefore, Plaintiffs were detained and threatened with citation and arrest without reasonable suspicion or probable cause, and with the intent to interfere with their state and federal constitutional and statutory rights to free speech, assembly, liberty, and privacy.

7.      Plaintiffs were identified or perceived as demonstrators, protestors, whistleblowers, or another class of advocate, and on the basis of that class-based identification or perception, were targeted by Rodeo Company, its Attorney, and Doe Deputies for interference with their rights, to truncate or otherwise limit their speech and assembly, including through unconstitutional threats of citation or arrest unless they stopped using their amplified sound, despite standing in a free speech zone in a public park and despite the target of Plaintiffs' protest being allowed to use its own amplified sound to drown out Plaintiff's speech.

8.      Deputies knew or should have known that Plaintiffs stood on a traditional and designated public forum and that Plaintiffs' constitutional rights to free speech and assembly precluded any interference, intimidation, threats, or other coercion by Defendants. All Defendants knowingly and willfully violated the Plaintiffs' constitutional rights directly and in conspiracy with each other with threats of fines and imprisonment.

9.      Defendants knew that Plaintiffs violated no law and therefore Defendants' interference, intimidation, threats, or other coercion knowingly violated Plaintiffs' rights.

10.     Defendants also knew that Plaintiffs violated no law because, while Plaintiffs were detained, Plaintiffs read the local laws pertaining to amplified sound aloud to the Deputies and Attorney. Local laws permitted amplified sound without any permit so long as the sound was under 95 decibels. Plaintiffs told Deputies that they possessed a decibel reader and that the reader indicated their sound was under 95 decibels. Deputies and Attorney didn't ask for proof nor did they utilize their own decibel reader (if they had one). Deputies and Attorney reasonably estimated or knew that Plaintiffs' volume was lawful. Deputies and Attorney failed to produce or cite any law or other rule that required a permit.

11.     Each Deputy who was present had the affirmative duty to protect Plaintiffs from having their constitutional rights violated by the Rodeo Company, its Attorney, and other Deputies. Rather than protect the civil rights of each Plaintiff, each Deputy failed to inform the other Deputies that Plaintiffs were within their rights to use amplified sound in a free speech zone and in a public park while the target of their protest used amplified sound. These Deputies, each, witnessed and allowed Plaintiffs' free speech to be curtailed. Each Deputy had the present ability to intervene but failed to intervene.

12.     Deputies acted consistently with implicit or explicit County policy that allows the harassment of free speakers by deferring to private parties or their polemic attorneys in whether and how to enforce the public law. Additionally or alternatively, County policy failed to train Deputies with how to handle such evident conflict of interest when Deputies clearly favored the rights of the Rodeo Company.

13.     Plaintiffs bring this case for their injuries and to secure their rights to advocate at Horsethief Canyon Park where they want to continue their peaceful political and educational activities without interference, arrest, or threat of arrest, and to ensure similar discrimination and retaliation does not occur at this venue against other members of the public.

**ORIGINAL COMPLAINT**

## II.    PARTIES

14.    Plaintiff **Amanda Lundberg** is a natural person and resident of the State of California.

15.    Plaintiff **Heather Wilson** is a natural person and resident of the State of California.

16.    Plaintiff **Connie Pearson** is a natural person and resident of the State of California.

17.    Plaintiff **Patricia Folgar** is a natural person and resident of the State of California.

18.    Plaintiff **Elvia Sedano** is a natural person and resident of the State of California.

19.    Plaintiff **Kathy Mangrich** is a natural person and resident of the State of California.

20.    Plaintiff **Jeniffer Robles** is a natural person and resident of the State of California.

21.    Plaintiff **Melanie Shaw** is a natural person and resident of the State of California.

22.    Defendant **County of Los Angeles** is a political subdivision of the State of California. It owns, maintains, and operates Horsethief Canyon Park. It can be served with process at 12400 Imperial Highway, Norwalk, CA 90650.

23.    Defendant **Doe Sheriff Deputies 1–3**, (hereafter, "Doe#1," "Doe#2," or "Doe#3,") each, are County employees who at all material times acted or failed to act within the course and scope of their employment and did so under color of state law. Each Doe Deputy is sued in his individual capacity.

24.    Defendant **Doe Rodeo Company** ("Rodeo Company" or Doe#4) is an unknown business entity. Plaintiffs are informed and believe that Rodeo Company's headquarters and principal place of business are located in Los Angeles County.

25.    Defendant **Doe Rodeo Attorney** ("Rodeo Attorney" or Doe#5) is an unknown individual. Plaintiffs are informed and believe that Rodeo Attorney is a California-licensed attorney who works for Rodeo Company. At all material times, Rodeo Attorney worked within the course and scope of his employment with Rodeo Company.

**ORIGINAL COMPLAINT**

26.     The true names and capacities, whether individual, corporate, associate, governmental, or otherwise, of Defendants named herein as **Does 6–10, Inclusive**, are unknown to Plaintiffs. Plaintiffs are not aware of their causes of action against them at this time, and therefore sues said Defendants by such fictitious names.

27.     Plaintiffs will request leave to amend this complaint when the true names and capacities of Does 1–10 have been ascertained. Plaintiffs are informed, believe, and thereon allege that each defendant designated herein as a Doe is legally responsible for the events and happenings hereinafter referred to, and legally caused injuries and damages proximately thereby to Plaintiffs, as hereinafter alleged.

28.     Below, "Doe Deputies" refers to Doe #1, Doe #2, and Doe #3, together with each other Sheriff's Deputy (among Does #6 to #10) who observed the events below.

29.     Plaintiffs are informed, believe, and thereon allege that at all times herein mentioned, each of the Defendants was the employee, servant, agent, delegate, co-conspirator and/or joint-venturer of each of the remaining Defendants and, in doing the things alleged in this complaint, acted within the full course and scope of said employment, service, agency, conspiracy, delegation and/or joint venture.


### III.     <u>JURISDICTION AND VENUE</u>

30.     This Court has original subject matter jurisdiction pursuant to Article VI, Section 5 of the California Constitution because the damages set forth in the prayer for relief are in excess of twenty-five thousand dollars ($25,000.00). Plaintiffs' claims all arise from the same factual circumstances and this Court represents the proper venue since liability and damages at issue herein occurred in the County of Los Angeles, State of California.

**ORIGINAL COMPLAINT**

31.     Inasmuch as at least one Defendant resides and/or has its principal place of business and legal residence in Los Angeles County, California, pursuant to Civ. Proc. § 395(a), and pursuant to Los Angeles County Superior Court local rules, venue of this action is therefore proper in the Superior Court of California, Los Angeles County, Central District.

32.     The instant suit is filed within the statute of limitations, including tolling of limitations pursuant to Judicial Council of California's Emergency Rule No. 9.


## IV.   <u>FACTUAL ALLEGATIONS</u>

33.     Rodeos are inherently cruel to nonhuman animals. Typical rodeo policies and procedures include inflicting pain on horses, cows, pigs, and others to provoke these animals to run, resist, and try to escape the pain. These behaviors, characterized as "fight or flight," are the basis for humans to ride or rope said animals into submission. The spectacle of inflicting pain on these animals, their struggle to escape the pain, and the humans' efforts (often overwhelming force) to conquer the frightened animals draws the public to pay, watch, and be entertained. In this case, Rodeo Company is the promoter and organizer of the rodeo, it causes or establishes the platform for the torment and infliction of pain on several horses, cows, pigs, or other animals, and Rodeo Company enjoys the profits obtained from the public who seeks to be entertained.

34.     Plaintiffs protest rodeos, including this rodeo promoted and organized by Rodeo Company, on the basis that they are inherently cruel, serve no legitimate purpose in society, should be banned like spectacles of fighting animals (dog fighting, rooster fighting, etc.), have been banned in numerous locations across the U.S., promote and normalize violence to the detriment of human and nonhuman animals, and that rodeos have historically and this rodeo may presently violate state laws that prohibit neglect and abuse of animals (e.g., P.C. § 597.1).

**ORIGINAL COMPLAINT**

35.     On or about October 12, 2019, during business hours, Plaintiffs assembled to protest the rodeo taking place at Horsethief Canyon Park in the City of San Dimas and County of Los Angeles. Plaintiffs assembled within fifty feet of the rodeo's ticket booth, beyond which an admission ticket was required to enter the rodeo venue. Plaintiffs stood and remained at all material times in a section approximately twenty feet wide and ten feet deep. This section had a short fence or gate where a six-foot wide banner stated, "FIRST AMENDMENT AREA." (*See* Image 1, below.) Each letter of the banner was around nine inches tall, the text was dark red on a white background, and the banner was clearly visible to all persons who walked by the designated free speech zone. Plaintiffs, each, held signs that asserted Plaintiffs' political, ethical, and social opinions including "Rodeos are Animal Cruelty," "Teach Your Children Compassion," and "Real Men Don't Hurt Animals." Plaintiffs additionally had flyers and other literature to distribute to any park visitor who accepted receipt of the literature. Plaintiffs spoke with park visitors who were interested in speaking with Plaintiffs and, on occasion, Plaintiffs chanted or spoke against the rodeo without there being a park visitor to talk to.



**ORIGINAL COMPLAINT**

36.     The Rodeo Company had a public announcement system at or near the ticket booth that the Rodeo Company used intermittently throughout Plaintiffs' protest. Noise from the p.a. system was loud and in excess of the volume of any normal human's conversational voice. As a result, Plaintiffs' verbal speech was drowned out when the p.a. system was in use. Additionally, Rodeo Company played music over the p.a. system when the p.a. system was not used to make a specific verbal instruction or statement. As such, Rodeo Company filled the free speech zone with loud, amplified noise at all material times and as a result of that noise, Plaintiffs could not effectively communicate their own verbal speech without the use of a megaphone.

37.     Each Plaintiff held and used or intended to hold and use a megaphone at different times to communicate their political, social, and ethical opinions against rodeos.

38.     Each Defendant was motivated to stop Plaintiffs from using the megaphone because (a) Defendants identified or perceived Plaintiffs as demonstrators, protestors, animal rights activists, or a similar class both by the content of their speech (verbal and visual statements against rodeos) and because Plaintiffs stood peacefully in the free speech zone, (b) because the content of Plaintiffs' speech opposed the profit-making venture of Rodeo Company, and (c) because the megaphone was able to amplify Plaintiffs' speech to be roughly equivalent to Rodeo Company's amplified sound—depending on how close a park visitor stood to either amplified noise source. In other words, Rodeo Company relied on its own amplified noise to drown out Plaintiffs' speech, so Rodeo Company called, caused, and incited the Deputy Does to threaten, intimidate, and coerce Plaintiffs to stop using their megaphone so that Rodeo Company could again dominate the area with its own amplified sound to drown out Plaintiffs' verbal speech.

39.     Rodeo Company, Rodeo Attorney, and/or Does #6–10 (who were not deputies) intended to silence Plaintiffs' amplified sound and, consequently, called and incited the Los Angeles

County Sheriff and complained about Plaintiffs' use of the megaphone. Doe Deputies (including Does #1–3) responded to the complaint and arrived at the Park.

40.     Deputy Does #1–3 saw Plaintiffs use the megaphone. While Plaintiff Wilson held and used the megaphone, Deputy Doe#1, a County Sheriff Deputy who was dressed in uniform including a badge, gun, and arm sleeve insignia with two chevrons, and Rodeo Attorney approached Wilson and stood very close to her and within her arm's reach. Deputy Doe#1 and Rodeo Attorney are each fairly large men whose presence within Wilson's arm's reach menaced and intimidated her. Further, they positioned themselves in front of Wilson, between herself and park visitors, in order to block Wilson's access and visibility to the park visitors and to prevent park visitors from approaching Wilson to speak with her.

41.     While Wilson was peacefully engaged in her free speech in the marked free speech zone, Deputy Doe#1 then interrupted Wilson's speech and told Wilson that she could not use the megaphone without a permit. He further stated that she would be cited or arrested for violating "Section 415e" if she continued to use the megaphone. (Plaintiffs note that there is no relevant statute identified as "415e," but Cal. P.C. § 415 relates to loud and unreasonable noise.)

42.     Wilson advised Deputy Doe#1 that no rule or law prevented her from using the megaphone so long as the noise generated was under 95 decibels, that she had on her person a decibel reader, and that the megaphone in fact generated noise under 95 decibels. (Plaintiffs do not judicially admit that a municipal code requiring noise to be under 95 decibels applies to the instant county-owned public park, nor do they admit that they can be held to such a standard if the Rodeo is allowed to exceed that standard.) Deputy Doe#1 did not challenge or disagree that the megaphone generated sound under 95 decibels.

43.     Plaintiffs' noise was not loud or unreasonable because (a) it was under 95 decibels and (b) the Rodeo Company caused greater and constant noise to fill the same area.

**ORIGINAL COMPLAINT**

44.     While Deputy Doe#1 threatened Plaintiffs, Rodeo Attorney was present. Deputy Does did not separate Rodeo Attorney from Plaintiffs so that Rodeo Attorney would witness Deputy Does' interference with Plaintiffs' free speech and for Deputy Does to thereafter receive accolades or other benefits from Rodeo Company. While present, Rodeo Attorney supervised, ratified, and endorsed Deputy Doe#1's threats as though the threats issued by Deputy Doe#1 were his own. Altogether, Rodeo Company and Rodeo Attorney co-opted Deputy Does as their own private security by inciting and instructing them to order Plaintiffs not to use the megaphone despite no rule being broken and no law being violated. Rodeo Attorney's instructions to Deputy Does and his continued presence incited Deputy Doe#1 to continue threatening and coercing Plaintiffs with citation or arrest if they used the megaphone.

45.     Deputy Doe#1 briefly left the free speech zone. Ms. Pearson then took the megaphone from Ms. Wilson and used it to exercise her free speech. Pearson announced slogans through the megaphone including "the rodeo is violence" and similar statements of conscience directed against Rodeo Company and rodeos generally. Deputy Doe#2 then approached Pearson and threatened her with citation or arrest if she continued to use the megaphone. Deputy Doe#2 stated further that Rodeo Attorney, who was still present and supervising the Deputies' interactions with Plaintiffs, (a) was the Rodeo Company's attorney, (b) that Rodeo Attorney had determined that Plaintiffs needed a permit to use the megaphone, and (c) that therefore it was unlawful for Plaintiffs to use the megaphone.

46.     Rodeo Attorney then interrupted Pearson and asked her if she had a permit to use the megaphone and ordered Pearson to produce said permit. But Rodeo Attorney and Deputy Does, each, knew how to determine what permits were active for the Park on this date. Each Defendant knew that no permit had been issued for Plaintiffs. Therefore, the several Defendants used the pretext of a permit requirement to question and interrupt Plaintiffs' free speech, to threaten them

**ORIGINAL COMPLAINT**

with citation or arrest, to intimidate and coerce them from exercising their free speech, and for the corrupt purposes of silencing their amplified sound so that park visitors could not effectively hear them due to Rodeo Company's amplified sound and to cause Plaintiffs to abandon their protest and leave the Park. Each Defendant had hoped and intended that their apparent authority as law enforcement officers and an attorney could persuade, coerce, and frighten Plaintiffs to leave and not to stand their ground to exercise free speech in the First Amendment Zone.

47.     Deputy Doe#1 returned to the free speech zone, interrupted and stopped Pearson from using the megaphone, and told her that she and any other Plaintiff would be cited or arrested if any Plaintiff used the megaphone. Pearson believed that Deputy Doe#1 would imminently arrest her regardless of a permit not being needed so she stopped using the megaphone.

48.     All Plaintiffs stood in the same free speech zone area as Wilson and Pearson. Each Plaintiff heard the several threats by Defendants, and reasonably interpreted these threats as being issued to them individually if they held and used the megaphone.

49.     No Plaintiff used the megaphone for the duration of the protest after and due to the final threat by Deputy Doe#1.

50.     Deputy Does, and each of them, were present and watched all of the facts alleged herein. Each of them had the present ability to intervene and prevent the other Deputy Does from interfering with Plaintiffs' free speech rights but each Deputy Doe failed to intervene in any manner or prevent the ongoing, evident violations of Plaintiffs free speech rights.

51.     No Plaintiff has returned to Horsethief Canyon Park since this date to exercise their free speech. Each Plaintiff is afraid to use amplified sound, such as a megaphone, at Horsethief Canyon Park even if they stand in a free speech zone and even if the subject of their free speech uses amplified sound and drowns out Plaintiffs' free speech.

**ORIGINAL COMPLAINT**

# V.   CAUSES OF ACTION

52.    Both the California Constitution and the federal Constitution are well known to protect freedoms of speech, assembly, and association. The United States Constitution ensures that the government, including Defendant Deputies, may not prohibit the expression of an idea simply because some official, government contractor, or members of society may find the idea offensive, uncomfortable, or disagreeable, and certainly not for gaining favors or accolades. California's Constitution goes further, protecting peaceful advocates against interference by private parties in some circumstances. This is in fact known to all Defendants.

53.    As relevant here, the Constitutions protect Plaintiffs to express themselves without unjustified interference or constraint and to peacefully advocate for rights and protections of horses and other animals. The same principles also protect other members of the public from Defendants' interference, discrimination, and retaliation as described herein.

54.    County has the obligation to ensure that its law enforcement officers (1) allow the lawful exercise of these freedoms by persons including Plaintiffs, (2) protect the rights of such persons if others – whether government officials or private persons – seek to interfere with these freedoms, and (3) not defer to or make any agreement with private persons that would undermine these Constitutional rights. County also has the obligation to ensure that its law enforcement officers (4) do not falsely assert limitations on freedoms of speech, assembly, and association where none exist, (5) do not threaten to arrest – or to incarcerate – persons who have not violated any law, and (6) do not defer to or make any agreement with private persons that would cause the unlawful exercise of police power.

55.    Doe Deputies #1, #2, and #3 – and any of Does #6 to #10 who were law enforcement officers – violated Plaintiffs' rights under both the California and federal Constitutions by their

above-described actions. Each of these Does had to know that their actions violated Plaintiffs' Constitutional rights.

56.     If any County law enforcement officer could, even half-way plausibly, contend that either (a) s/he did not know of Plaintiffs' Constitutional rights, and/or (b) did not know they could not defer to or implement any agreement with Rodeo Company (Doe #4) or Rodeo Attorney (Doe #5), then County grievously has failed to train law enforcement officers on well-established Constitutional law. Even if the County does require such training, its policies and customs – as evident in the above-described incidents and in other incidents (including incidents at other venues) – tolerate, authorize, and condone actions by its officers to deny and to seek to deny fundamental freedoms of speech, assembly, and association based on the content of messages by peaceful advocates. Moreover, County fails to supervise and/or discipline officers who violate constitutional rights in the manner that occurred here.

57.     Even without being an attorney – but especially as an attorney, Rodeo Attorney had to know he had no lawful authority (a) to prevent peaceful exercise of freedom of speech, assembly, and association in an expressly designated Free Speech Zone, or (b) to seek to implement any agreement or understanding whereby he personally, or Rodeo Company, could commandeer the authority of law enforcement officials to deny Plaintiffs' rights. Yet the above-described statements by Deputies evidence that such an unlawful agreement or understanding was being implemented. County, Doe Deputies, Rodeo Company, Rodeo Attorney, and Does#6–10 have acted in concert—whether by conspiracy, collusion, or tacit approval—to deprive Plaintiffs of the several constitutional rights detailed herein.

58.     The following causes of action are pleaded both cumulatively and, if they might otherwise be considered inconsistent, in the alternative.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CONSTITUTION, ART. I, SEC. 2 & 3**
**BY ALL PLAINTIFFS AND AGAINST COUNTY AND DOE DEPUTIES**

59.     Plaintiffs incorporate each paragraph above here by reference as though fully set forth.

60.     Defendants' above-described conduct has been and is in violation of Plaintiffs' rights to freedom of speech, assembly, and association under Art. I, Sec. 2 & 3 of the California Constitution.

61.     An actual controversy exists because Defendants expressly have threatened to deny Plaintiffs' rights after already having denied those rights. Plaintiffs assert that their peaceful expressive activity is protected and must be allowed in the public areas and free speech zone at Horsethief Canyon Park. Plaintiffs contend Defendants' actions, practices, and policies, or lack of same, violate the Plaintiffs' speech, assembly, and association rights.

62.     Plaintiffs are entitled to declaratory and injunctive relief (detailed hereunder) to affirmatively protect their rights (and public rights) to use Horsethief Canyon Park, as well as damages.

63.     In committing the acts and omissions alleged above, Defendant Deputies acted in a despicable manner; with malice, fraud, or oppression; with extreme indifference to the rights of Plaintiffs at a level which decent citizens should not have to tolerate; and with intent to cause harm to Plaintiffs. Defendant Deputies are therefore liable for punitive damages.

**SECOND CAUSE OF ACTION**
**FIRST AMENDMENT VIOLATION – CONTENT-BASED DISCRIMINATION**
**ALLEGED BY ALL PLAINTIFFS AND AGAINST COUNTY AND DOE DEPUTIES**

64.     Plaintiffs incorporate each paragraph above here by reference as though fully set forth.

65.     The First Amendment to the U.S. Constitution, applied to California through the Fourteenth Amendment to the U.S. Constitution and enforceable pursuant to 42 U.S.C. § 1983, provides that state actors may not abridge the freedom of speech, assembly, or association. This

**ORIGINAL COMPLAINT**

secures the rights of individuals, including those like Plaintiffs, from interference by government or state actors based on the content of their speech.

66.     Defendants took actions, including through the above-described coercion, intimidation, and threats of arrest against Plaintiffs in order to inhibit, suppress, curtail, and otherwise regulate Plaintiffs' speech based on its expressive content, viewpoint, symbolic value, and/or communicative impact of their speech. Defendants' actions have had their desired, unconstitutional effect of chilling Plaintiffs' rights to speech, expression, and assembly by forcing Plaintiffs to abandon their expressive activities and not return.

67.     Defendants are persons within the jurisdiction of the U.S. for purposes of § 1983.

68.     Defendants violated § 1983 and have committed to continue actions, policies and customs violating Plaintiffs' rights under § 1983.

69.     Defendants' actions, policies, and customs, as herein described are a content-based restriction on free speech subject to strict scrutiny.

70.     Defendants' actions, policies, and customs were not and are not narrowly tailored to achieve a compelling state interest.

71.     County and Doe Deputies do not have a compelling interest in singling out a particular viewpoint and policing based on the content of Plaintiffs' expressive activity as described herein.

72.     As alleged herein, County and Doe Deputies intentionally provided support requested by and in favor of Rodeo Company and Rodeo Attorney and discriminated against Plaintiffs. Plaintiffs were forbidden to engage in protected expressive activity, on pain of citation, arrest, and imprisonment. Meanwhile, Rodeo Company enjoyed their own right to use amplified sound at the same time, place, and manner as Plaintiffs but to Plaintiffs' detriment by drowning out Plaintiffs' speech without a megaphone. Plaintiffs were singled out solely based on the content of their message.

**ORIGINAL COMPLAINT**

73.     Defendants violated Plaintiffs' rights, privileges, and immunities under the First Amendment of the U.S. Constitution, made applicable to Defendants by the Fourteenth Amendment.

74.     Plaintiffs are entitled to declaratory and injunctive relief (detailed hereunder) to affirmatively protect their rights (and public rights) to use Horsethief Canyon Park, as well as damages.

75.     In committing the acts and omissions alleged above, Defendant Deputies acted in a despicable manner; with malice, fraud, or oppression; with extreme indifference to the rights of Plaintiffs at a level which decent citizens should not have to tolerate; and with intent to cause harm to Plaintiffs. Defendant Deputies are therefore liable for punitive damages.

**THIRD CAUSE OF ACTION**
**FIRST AMENDMENT VIOLATION – RETALIATION**
**ALLEGED BY ALL PLAINTIFFS AND AGAINST DOE DEPUTIES**

76.     Plaintiffs incorporate each paragraph above here by reference as though fully set forth.

77.     Plaintiffs were engaged in constitutionally protected free speech and assembly via a peaceful demonstration as described herein.

78.     Plaintiffs' speech and assembly was related to matters of public concern.

79.     Defendants' acts of intimidating, threatening, and causing Plaintiffs to abandon the use of their megaphone were motivated and caused by Plaintiffs' exercise of constitutionally protected activity that Defendants opposed or disagreed with.

80.     Defendants' actions caused Plaintiffs to suffer injuries that would chill a person of ordinary firmness from continuing to engage in such constitutionally protected activity including, without limitation, threatening each Plaintiff with citation or arrest for engaging in free speech in an explicitly marked FIRST AMENDMENT AREA in a public park.

81.     Defendants proximately have caused and will cause significant harms to Plaintiffs.

**ORIGINAL COMPLAINT**

82.     Plaintiffs are entitled to declaratory and injunctive relief (detailed hereunder) to affirmatively protect their rights (and public rights) to use Horsethief Canyon Park, as well as damages.

83.     In committing the acts and omissions alleged above, Defendant Deputies acted in a despicable manner; with malice, fraud, or oppression; with extreme indifference to the rights of Plaintiffs at a level which decent citizens should not have to tolerate; and with intent to cause harm to Plaintiffs. Defendant Deputies are therefore liable for punitive damages.

**FOURTH CAUSE OF ACTION**
**FAILURE TO TRAIN, FAILURE TO SUPERVISE — *MONELL***
**ALLEGED BY ALL PLAINTIFFS AND AGAINST COUNTY**

84.     Plaintiffs incorporate each paragraph above here by reference as though fully set forth.

85.     County's Sheriff and Deputy Sheriffs, including Doe Deputies, are the principal law enforcement officers for Horsethief Canyon Park. County, through its policy makers, enacted, adopted, decided, or ratified several policies, procedures, practices, customs, or equivalent, that caused or were the driving force behind Plaintiffs' injuries in the following ways among others:

   a.   Training or failing to train its sheriff deputies in constitutional rights to free speech regarding the use of amplified sound and public parks, and the combination of the two.

   b.   Training or failing to train its sheriff deputies in constitutional rights to equal protection when private persons cannot effectively communicate their free speech without amplified sound due to another party's use of amplified sound, but private persons are nonetheless ordered not to use amplified sound.

   c.   Training or failing to train its sheriff deputies in not being influenced by private persons, such as Rodeo Company and Rodeo Attorney, to interpret and decide the law.

**ORIGINAL COMPLAINT**

d.  Training or failing to train its sheriff deputies in not granting favoritism to a business

that engages in its own free speech while simultaneously denying demonstrators,

protestors, or similar of their free speech.

86.    Policy Makers include (without limitation) Los Angeles County Board of Supervisors,

Los Angeles County Sheriff, as well as others who may be identified as having policy-making

authority, and who enacted, adopted, followed, and/or ratified said challenged County Agency

policies. These policy makers subverted their public service and constitutional mandates with the

injurious policies, practices, procedures, or customs complained about herein.

## FIFTH CAUSE OF ACTION
### VIOLATION OF THE TOM BANE CIVIL RIGHTS ACT – CIV. CODE § 52.1
### ALLEGED BY ALL PLAINTIFFS AND AGAINST ALL DEFENDANTS

87.    Plaintiffs incorporate each paragraph above here by reference as though fully set forth.

88.    The Bane Act forbids interference by threat, intimidation, or coercion, or attempts to

interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or

individuals of rights secured by the U.S. Constitution, its laws, or the rights secured by the

California Constitution or its laws.

89.    Defendants have interfered by threats, intimidation, or coercion, and have attempted to

interfere by threats, intimidation, or coercion, with Plaintiffs' exercise and enjoyment of their

rights of freedom of expression granted by the U.S. and California Constitutions.

90.    Based on the content of Plaintiffs' messages, each Defendant contributed to cause

interference, and have attempted to interfere with Plaintiffs' rights under the U.S. and California

Constitutions to assemble and speak, peacefully, in the public areas of Horsethief Canyon Park.

Doe Deputies unconstitutionally purported to exercise authority as law enforcement officers

despite having actual notice and personal knowledge more than sufficient to establish Plaintiffs'

**ORIGINAL COMPLAINT**

rights to expression and assembly, and unconstitutionally deferred to unconstitutional requests from Rodeo Company, Rodeo Attorney, and Does#6–10, motivated by favor or accolades.

91.     As a result of the Defendants' misconduct, each Plaintiff, as well as the public who are similarly situated, have been denied their rights and deterred from exercising their rights. Defendants' conduct proximately caused significant harms to Plaintiffs. Plaintiffs are entitled to declaratory and injunctive relief (detailed hereunder) to affirmatively protect their rights (and public rights) to use Griffith Park.

92.     Plaintiffs are entitled to declaratory and injunctive relief (detailed hereunder) to affirmatively protect their rights (and public rights) to use Horsethief Canyon Park, as well as damages.

93.     In committing the acts and omissions alleged above, Defendant Deputies, Rodeo Company, and Does (i.e., not County) acted in a despicable manner; with malice, fraud, or oppression; with extreme indifference to the rights of Plaintiffs at a level which decent citizens should not have to tolerate; and with intent to cause harm to Plaintiffs. Defendant Deputies, Rodeo Company, and Does are therefore liable for punitive damages.

## VI.     REQUEST FOR RELIEF

Plaintiffs request judgment against Defendants as follows:

1.     A declaration

    a.     Confirming the extent of Horsethief Canyon Park as a public forum under California law,

    b.     Defendants' actions that resulted in Plaintiffs being cited, arrested, or ejected by threats, intimidation, and coercion from public areas are unconstitutional both on their face and as applied to Plaintiffs, and

**ORIGINAL COMPLAINT**

c.  Defendants' policies and practices, or lack of same, that caused, contributed to, or resulted in Defendants interfering with Plaintiffs' free speech by threats, intimidation, and coercion from the public areas are unconstitutional.

*By issuing an appropriate declaration of Plaintiffs' rights, the Court will clarify, for Plaintiffs and the public, the extent of their expressive rights in the public areas and reduce or eliminate the threat of unlawful threats so that Plaintiffs may return for peaceful advocacy.*

*Without such a declaration, threats of citation and arrest by Defendants will continue to chill the exercise of expressive rights by Plaintiffs and there will continue to be disputes and controversy surrounding the Defendants' current actions, practices, and/or policies. Defendants' continued implementation of the above-described policies, and their repeated demands that Plaintiffs comply with such policies, cause great and irreparable injury to Plaintiffs, as well as to members of the public who might benefit by hearing Plaintiffs' message and to members of the public who themselves want to engage in peaceful advocacy without threats of arrest by Defendants.*

*Defendants' actions thus limit or prevent Plaintiffs and others similarly situated from presenting information to the public concerning matters of general interest, timeliness, and importance.*

2.  Against all Defendants: Actual, Incidental, and Consequential Damages in an amount to be proven at trial.

3.  Against Rodeo Company, Rodeo Attorney, Does#6–10, and Doe Deputies: Punitive Damages in an amount to be proven at trial.

4.  For violations of the Bane Act: No less than One Thousand Dollars Actual Damages, Treble Actual Damages; a Civil Penalty of $25,000 for each Plaintiff and against each Defendant.

5.  Vicarious liability against Rodeo Company for the actions of its servants Rodeo Attorney and Does#6–10.

**ORIGINAL COMPLAINT**

6.      For reasonable attorneys' fees and costs as provided by, *inter alia*, Code of Civil Procedure § 1021.5, Civil Code §§ 52(b)(3), 52.1(h), and 42 U.S.C. § 1988.

7.      Pre- and post-judgment interest according to proof and as allowed by law.

8.      For such other and further relief as the Court deems just and proper.


DATED:  February 14, 2022

By:     */s/ Jerold D. Friedman*
        Jerold D. Friedman
        *Attorney for Plaintiffs*

**ORIGINAL COMPLAINT**

**DEMAND FOR JURY TRIAL**

Amanda Lundberg, Heather Wilson, Connie Pearson, Patricia Folgar, Elvia Sedano, Kathy Mangrich, Jeniffer Robles, and Melanie Shaw hereby respectfully demand trial by jury in this action for all issues that may be tried to a jury.

DATED:  February 14, 2022

By:    */s/ Jerold D. Friedman*
              Jerold D. Friedman
              *Attorney for Plaintiffs*

**ORIGINAL COMPLAINT**